**BARN CAFE & RESTAURANT, INC., Plaintiff-Appellant, v. BOARD OF LIQUOR CONTROL et, Defendant-Appellee.**

Common Pleas Court, Franklin County.

No. 181167. Decided May 21, 1951.

Isadore Topper, Columbus, Robert N. Gorman, Cincinnati, for appellants.

Hon. C. William O'Neill, Atty. Genl., Thomas R. Lloyd, Asst. Atty. Genl., Columbus, for appellees.

**OPINION**

By REYNOLDS, J.

This case is before the Court on Appeal from a decision of the Board of Liquor Control affirming a ruling of the Director of the Department of Liquor Control suspending appellant's liquor permit for 25 days.

Following are the charges which had been preferred against appellant:

"That on December 8th, 9th, 10th, and 13th, 1949, you and/or you agents or employees, did have, harbor, keep, possess or employ, or allow to be kept, exhibited or used in, upon or about your permit premises, devices, machines or apparatii, to-wit, race horse betting sheets; and that you and/or your agents or employees, did allow gaming and wagering on the outcome of horse races on your permit premises—in violation of the provisions of the Liquor Control Act and the regulations of the Board of Liquor Control."

The following is the ruling of the Board of Liquor Control from which the appeal was taken:

"This cause came on to be heard after due notice to Barn Cafe & Restaurant, Inc., 616 Lodge Street, Cincinnati 2. Hamilton County, Ohio, as required by law upon the order of the Director of the Department of Liquor Control to show cause why Permit (D-5) 33356 heretofore issued to the said Barn Cafe & Restaurant, Inc., by the Department of Liquor Control should not be revoked for violation by the said permit holder of the provisions of §6064-25 GC and Regulation No. 32-A promulgated by the Ohio Board of Liquor Control.

"The Board finds from the evidence that on December 8th, 9th, 10th and 13th, 1949, the said permit holder and/or its agents or employees had, harbored, kept, possessed or employed, or allowed to be kept, exhibited or used in, upon or about the said permit premises, devices, machines or apparatus, to-wit, race horse betting sheets; and that the said permit holder and/or its agents or employees allowed gaming and wagering on the outcome of horse races, on the said permit premises; in violation of provisions of the General Code of Ohio and regulations of the Ohio Board of Liquor Control.

"It is therefore ordered and adjudged that Permit (D-5)

33356 be, and the same is suspended for a period of twenty-five (25) days, beginning September 25, 1950, and ending at midnight, October 19, 1950."

The evidence in this case shows that the Hangar Theatre Bar, Inc., is located on the first floor of a four story building at the corner of Walnut and Gano Streets in the City of Cincinnati, Ohio. On the second floor is a room occupied by the "Cincinnati News Club" which has been a tenant in the same room since 1933. On the same floor there is a locker room for the employees of the Hangar Bar and office rooms of The Electron Company. The second floor is reached by a stairway entering from Walnut Street, opening on to a hall on the second floor from which the News Club is reached through a door to the left, the Electron Company through a door on the right and the locker room straight down the hall.

On the first floor between the Bar of appellant and the dining room operated by it is a hall, accessible to both rooms, and from which hall there is a stairway leading to the second floor hall above described. There is a door at the foot of the stairs, marked "employees only," and is a so-called fire or emergency door, that is always able to be pushed open when coming down the stairs, but is governed by a push button when going up the stairs.

At the next corner of Gano Street, at the corner of Gano and Lodge Alley in the same block as the Hangar, is the Barn Bar and Dining Room which is operated by a separate corporation but with some of the same stockholders as the Hangar Bar, and there existed a family relationship among the interested parties. A common kitchen is used by both businesses and it is possible to go from the Barn Bar through its dining room and the common kitchen into the rooms of the Hangar Bar. The Barn Bar is located in a four story building but there is no connection between the upper floors of that building and the upper floors of the building in which the Hanger Bar is located so that to get from the Barn Bar to the rooms occupied by the Cincinnati News Club one must either go around the street to the stairway on Walnut Street, or go through the common kitchen and up the stairway marked "For employees only."

The evidence is that an inspector of the Liquor Department on several occasions placed bets on horse races with a man named Harvey in the aforesaid club rooms and it is on his testimony that the permit holder, to-wit: Barn Cafe & Restaurant, Inc., was found to have "harbored, kept, possessed or employed or allowed to be kept, exhibited or used in, upon or about the said permit premises, devices, machines or apparatus,

to-wit, race horse betting sheets and that said permit holder allowed gaming and wagering on the outcome of horse races on the said premises * * *"

Hinde, the inspector, testified that he visited the "Barn" on December 5th, 6th, 7th, 8th, 9th and 10th, also on the 13th, purportedly for the purpose of getting evidence of gambling on the premises.

Apparently he saw or heard nothing on his first two visits which indicated anything illegal, but on the 7th he said he talked to a man named Hall who told him that he worked in the **book** upstairs. (Emphasis ours.)

Again on the 8th he talked to Hall who informed him that if he wanted to go upstairs the bartender at the Barn would show him the way.

He further testified that on the 8th he asked the bartender to show him the way upstairs and the bartender told the porter to show him up, which he did, taking him through the common kitchen, and up this stairway, marked as before stated for "Employees only" and at the top of the stairs, pointed to the door which opened into the clubrooms where he made a bet.

He returned on the 9th, 10th and 13th, always first entering the Barn Bar and going alone through the kitchen to the inside stairway according to his testimony.

Considerable doubt is thrown on this part of his testimony as the evidence is that the door is locked from the lower side, and controlled by a buzzer and when he was asked if the door was usually locked, he stated "I wouldn't know, the porter pulled it open."

Certainly if he had gone up that way alone on several occasions he would have known if the door was locked so that when he gave this answer and that the porter had opened the door on the only occasion on which he claimed the porter was along, the only conclusion the Court can reach is that he went up this stairway but once.

The bartender at the Barn denied ever having been asked by Hinde how to get upstairs and denied that he had instructed the porter to direct him.

The evidence is that but one porter was employed at the Barn, at all the times in question, and he was called as a witness and denied ever having shown Hinde the way upstairs and Hinde testified that he was not the one who had performed this service for him.

Another significant thing about Hinde's testimony is the fact that although he had talked with Hall on at least two occasions in the Barn, and had been told that he worked

upstairs on the Book, that although Hinde later visited the club rooms where he made bets on at least four different days, there is a total failure of any evidence to indicate that Hall was ever there.

Another matter of significance is the fact that with all the Inspector's efforts, zeal and opportunity to get evidence, if any, to show some relationship between the two permit holders and the betting in the club rooms, not a single patron or visitor in the club rooms used this stairway connecting between the second and first floors.

There is absolutely no evidence that any of the people interested in either the Hangar or the Barn had any interest or membership in the Cincinnati News Club, and the only thing common is that all three corporations are tenants of The Schavel Realty Company, the owner of all the properties involved, and the News Club was and had been a tenant for several years of the former owner at the time the property was purchased by The Schavel Realty Company.

The Court therefore finds that there is a complete failure of the evidence to show any connection between appellant permit holder and the premises where bets on horse races were accepted, except proximity, and that there is nothing to support the finding that this permit holder, "its agents or employees had, harbored, kept, possessed or employer, or allowed to be kept, exhibited or used in, upon or about the said permit premises, devices, machines or apparatus, to-wit, race horse betting sheets; and that the said permit holder and/or its agents or employees allowed gaming and wagering on the outcome of horse races, on the said permit premises;"

It is therefore the ruling of the Court that the finding and ruling of the Board of Liquor Control be reversed and vacated.